UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KPK Technologies, Inc., and
Muralikrishna Killi,

    Plaintiffs,

v.                                  Case No. 19-10342

Kenneth T. Cuccinelli, II,[1] *Acting
Director of United States Citizenship*    Sean F. Cox
*and Immigration Services*              United States District Court Judge

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

An H-1B visa allows a non-immigrant to be admitted into the United States to perform services in a specialty occupation. Plaintiff KPK Technologies, Inc., an information technology company that provides professionals to a staffing agency, filed a petition for an H-1B visa for its employee, Plaintiff Muralikrishna Killi. On December 27, 2018, the United States Citizenship and Immigration Services ("USCIS") denied the petition, concluding that Plaintiffs had failed to establish that Killi would be working in a specialty occupation at his end-client placement.

On February 4, 2019, KPK and Killi filed this action for judicial review of the USCIS's decision. Because this case is governed by the Administrative Procedure Act ("APA"), the parties agreed to an expedited, four-brief schedule. Plaintiffs filed a motion for summary judgment, the

---

[1]Kenneth T. Cuccinelli, II, became the acting director of the United States Citizenship and Immigration Services on June 10, 2019, replacing Lee Francis Cissna, the originally named defendant. *See* Fed. R. Civ. P 25(d)

1

disposition of which will decide this case as a matter of law. The Court heard oral arguments on this motion on August 30, 2019.

For the reasons below, the Court will deny Plaintiffs' motion for summary judgment. As the parties confirmed at the August 30th hearing, the Court's disposition of this motion resolves this case. Accordingly, the Court will enter judgment in favor of the Defendant.

## BACKGROUND

KPK is an information technology company "providing computer-related services." (ECF No. 9, PageID 779). In 2018, KPK contracted with a professional staffing firm, KFORCE, to supply information-technology personnel to KFORCE's customers. (ECF No. 10, PageID 810). KPK and KFORCE agreed that Killi—a KPK employee—would perform software development services for PeaceHealth—a KFORCE client. (ECF No. 8-2, PageID 700). PeaceHealth is a not-for-profit healthcare system headquartered in the State of Washington.

On May 3, 2018, KPK filed a petition for a H-1B visa on Killi's behalf. (ECF No. 8, PageID 462-590). The petition included the following materials: a cover letter from KPK with a description of the roles and responsibilities of the offered position, a completed labor condition application, copies of Killi's Indian passport and then-operative American visa, a copy of the subcontractor agreement between KPK and KFORCE, Killi's employment agreement with KPK, documentation regarding Killi's previous employment and education, and documentation regarding KPK's business practices and regulatory compliance.

On September 7, 2018, KPK requested that the USCIS upgrade Killi's petition to "premium processing." (ECF No. 8-2, PageID 561). KPK submitted the following materials with this request: a cover letter from KFORCE describing Killi's placement at PeaceHealth and his general

2

employment responsibilities, a copy of Killi's Peacehealth-issued ID badge, Killi's wage history, and Killi's timesheets.

On September 21, 2018, the USCIS issued a "request for evidence." (ECF No. 8-2, PageID 591-606). USCIS asked KPK to provide additional evidence on Killi's worksite, the employer-employee relationship between KPK and Killi, and KPK's right to control Killi.

USCIS also asked KPK to provide evidence that Killi's position qualified as a specialty occupation "based on the work requirements imposed by the end-client who uses [Killi's] services." (ECF No. 8-2, PageID 595) (citing *Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000)). USCIS provided a non-exhaustive list of evidence that it would accept to meet this requirement. (ECF No. 8-2, PageID 595-596).

On December 14, 2018, KPK provided information in response to the USCIS's request, including a letter from KPK (with business records related to Killi's duties and performance), a redacted client-services agreement between KFORCE and PeaceHealth, a letter from KFORCE confirming Killi's placement at PeaceHealth, government and private sector postings describing software development as a specialty occupation, and additional evidence regarding Killi's qualifications.

KPK also provided a letter from PeaceHealth, dated October 26, 2018. The letter stated

> Mr. Killi is a competent IT professional with knowledge and skills required for the assigned project. For this purpose, KPK promised, warranted and confirmed that such Software Developer has at least [a] Bachelor's degree in Computer Science, Engineering or a closely related specialty field with at least four years related experience, and that Mr. Killi has the necessary training and up-to-date technological theoretical skills to perform the complicated job functions for this specialty occupation.

(ECF No. 8-2, PageID 683). The PeaceHealth letter also stated that, "[s]ome of the tasks that Mr.

Killi will perform as part of this project are:"

- Analyze business requirements from the business users and perform technical evaluation for implementing changes in the Lawson/Infor environment.

- Work on IPA (Infor Process Automation) flows using IPD (Infor Process Designer) tool that is provided by Infor systems.

- Build a new IPA (Infor Process Automation) flows that will be promoted to production to meet the business requirements. Modify existing IPA (infor Process Automation) flows to enhance the existing process and/or fix issues in the current process.

- Contribute to team effort by accomplishing related results as needed.

- Coordinate with team members to implement/migrate changes to QA environment and Production environment.

- Build and maintain custom Lawson programs to hold the mapping and looup data & develop HTML form that collects input data and invoke Lawson forms to set up activities Work on Infor cloud suit project changes as and when required.

(ECF No. 8-2, PageID 683-684).

On December 28, 2018, the USCIS denied Killi's petition for an H-1B visa. (ECF No. 8-2, PageID 450-455). The USCIS concluded "[t]he record, as presently constituted, is insufficient to establish that the position offered to the beneficiary qualifies as a specialty occupation and that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." (ECF No. 8-2, PageID 454).

As to the PeaceHealth letter, the USCIS found:

This letter generally describes the beneficiary's proposed duties. The letter does not describe the beneficiary's duties in detail so that USCIS can determine whether the beneficiary will engage in services in a specialty occupation at the end-client location. Further, the letter states "Terms. While this is a long-term project, PeaceHealth reserves the right to terminate the staffing relationship with KPK or its vendor." The letter does not list any specific dates for the beneficiary services and is not accompanied by any contract between PeaceHealth and KFORCE (or your organization) that specifies any dates for the beneficiary's services. Thus the end-

client letter you submitted and redacted contract does not demonstrate that the beneficiary will engage in services in a specialty occupation at the third-party location for the requested validity period from May 7, 2018 to February 12, 2020.

(ECF No. 8-2, PageID 454)

The USCIS indicated that the lack of evidence as to Killi's specific duties at PeaceHealth was fatal to Killi's application:

> The present record does not demonstrate the specific duties the beneficiary would perform under contract for your clients. The court in *Defensor v. Meissner*, 201 F.3d 384 (5th Cir. 2000) held that for purposes of determining whether a proffered position is a specialty occupation, a petitioner acting in a similar manner as your organization is merely a "token employer," while the entity for which the services are to be performed is the "more relevant employer." The *Defensor* court recognized that evidence of the client companies' job requirements is critical where the work to be performed is for an entity other than your organization. Accordingly, the court held that the legacy Immigration and Naturalization Service (now USCIS) had reasonably interpreted the INA and regulations to require that a petition produce evidence that the proffered position qualifies as a specialty occupation on the basis of the requirements imposed by the entities using the beneficiary's services.

(ECF No. 8-2, PageID 454).

On February 4, 2019, KPK and Killi filed this lawsuit, challenging the USCIS's denial of Killi's H-1B visa petition. Because this action is for judicial review of an administrative decision, the parties agreed to a four-brief schedule that would decide this case as a matter of law. On May 20, 2019, Plaintiffs filed their motion for summary judgment, arguing that the USCIS's determination that Plaintiffs had failed to demonstrate that Killi would work in a specialty occupation at Peacehealth was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.[2] The USCIS filed a response, which contained two arguments: (1) that

---

[2] Plaintiffs' motion also addressed the denial of an H-1B visa for then-Plaintiff Praveen Kumar Bondala Nageswararao. On June 6, 2019, the Court entered a stipulated order remanding Nageswararao's case to the USCIS for further proceedings. (ECF No. 10). Thus, the denial of Nageswararao's visa application is no longer at issue in this case.

5

Plaintiffs' application failed to demonstrate an employer-employee relationship between KPK and Killi, and (2) that Plaintiffs' application failed to establish that he would be employed in a specialty occupation at PeaceHealth. Plaintiffs filed a reply, which pointed out that failure to establish an employee-employer relationship was not a basis for the visa denial. Defendants filed a sur-reply, acknowledging the error, and agreeing that the sole ground for denial was that Plaintiffs had failed to show that Killi would be employed in a specialty occupation.

## ANALYSIS

**I.     Standard of Review**

When a federal court is reviewing a final agency action, the usual rules and standards governing summary judgment do not apply. *See Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999); *see also Altimetrik Corp. v. Cissna*, 2018 WL 6604258 at *2 (E.D. Mich. Dec. 17, 2018). Summary judgment simply "'serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.'" *Singh v. Johnson*, 2016 WL 3476701, at *7 (E.D. Mich. June 27, 2016) (quoting *Resolute Forest Prods., Inc. v. U.S. Dep't of Agric.*, 187 F.Supp.3d 100, 106 (D.D.C. 2016)).

Under the APA, a federal court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995). In reviewing agency action under this narrow standard, the reviewing court may not substitute its judgment for that of the agency even if the court disagrees with the agency's decision. *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).

The reviewing court must base its review on the administrative record and may not consider any new evidence. *Alexander*, 165 F.3d at 481. The agency action may be reversed only if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

An agency's factual findings are reviewed under the substantial evidence standard. *See Steeltech, Ltd. v. U.S. Envtl. Prot. Agency*, 273 F.3d 652, 657 (6th Cir. 2001). Under this standard, review of an agency's "factual determinations is limited to determining whether those determinations are supported by substantial evidence on the record as a whole -- not whether there was substantial evidence in the record for a result other than that arrived at by the [agency]." *Id*. In the immigration context, a particular agency finding "can be reversed only if a reasonable factfinder would have to reach another conclusion[;]" in other words, this Court can reverse the USCIS's decision only "if the evidence compels a conclusion other than the one the agency reached." *Smith v. Chater*, 99 F.3d 780, 782 n.3 (6th Cir. 1996) (citing *Immigration and Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481(1992)).

## II.     Applicable Law and Regulations

The H-1B employment visa permits a non-immigrant to be admitted into the United States "to perform services ... in a specialty occupation described in section [1184(i)(1)]." 8 U.S.C. § 1101(a)(15)(H)(i)(b). In order to qualify for an H-1B visa, "the petitioning employer and the alien beneficiary must satisfy a two-prong test: (1) the position that the alien seeks to occupy must qualify

7

as a specialty occupation; and (2) the alien must herself be qualified to perform services in said occupation." *EG Enters. v. Dep't of Homeland Sec.*, 467 F.Supp.2d 728, 734 (E.D. Mich. 2006) (internal quotations omitted). The burden of proof is on the employer and the non-immigrant to prove both prongs of the test. *Id*. at 734 (citing 8 U.S.C. § 1361). The parties do not dispute that Killi is qualified to provide services as a software developer.

A "specialty occupation" is one requiring "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). The Code of Federal Regulations further states that a

> specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). Because this list is non-exhaustive, the USCIS has set forth four criteria, one of which a position must satisfy to qualify as a "specialty occupation:"

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree; (3) The employer normally requires a degree or its equivalent for the position; or (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

### III. The Parties' Positions

Plaintiffs argue that they have proven that Killi's job as a software developer meets all four criteria outlined in 8 C.F.R. § 214.2(h)(4)(iii)(A). First, the Department of Labor's Occupational Outlook Handbook—a resource oft-cited by the USCIS, *see Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 146 (1st Cir. 2007)—indicates that software developers are normally required to possesses at least a bachelor's degree. Second, the requirement of at least a bachelor's degree is common to the industry, as evidenced by the online job postings and recruiting materials that Plaintiffs submitted. Third, KPK requires its software developers to have at least a bachelor's degree, as evidenced by its own employment records and job postings. Fourth, the nature of Killi's duties are specialized and complex because he is "applying his IT skills to serve [PeaceHealth's] unique and distinctive requirements." (ECF No. 9, PageID 794).

Plaintiffs also argue that the USCIS misapplied *Defensor*. While conceding that "the mere assertion of educational requirement by the petitioner-staffing agency is not enough," Plaintiffs argue that *Defensor* is distinguishable from this case because it dealt with the position of "regular nurse, which may or may not require a bachelor degree." (ECF No. 9, PageID 795). Here, Plaintiffs argue, the position is "a bona fide specialty occupation by its own nature regardless of whether it was filled by KPK Technologies or [PeaceHealth]." *Id*. Moreover, Plaintiffs argue that, even if Defensor is applicable, USCIS "ignored or overlooked" the letter from PeaceHealth, which "clearly confirmed that the position is a professional one requiring at least a [bachelor's] degree in [a] computer field." *Id.*

In response, the USCIS argues that it could not apply the four-prong specialty occupation analysis under 8 C.F.R. § 214.2(h)(4)(iii)(A) because there was a "lack of detailed evidence of what Mr. Killi would actually be doing for PeaceHealth, including the criteria for his job." (ECF No. 11,

9

PageID 828). The USCIS summarizes its position like this: "It is not enough to just call the position a software developer position; the petitioner must show that the work constitutes software development. If the duties submitted through evidence, for example, were less complex than software development, USCIS has, in other cases, found that duties themselves are not sufficient to prove the position that the petition is based on." (ECF No. 11, PageID 829).

## IV.   Application

This case is close. The USCIS is correct that it can require KPK to "adduce evidence that the entit[y] actually employing [Killi's] services required [Killi] to have [a] degree." *Defensor*, 201 F.3d at 388. And, although some aspects of the administrative record support Plaintiffs' contention that Killi is employed in a specialty occupation, the Court can reverse the USCIS's decision only if the evidence *compels* a different conclusion. *Smith,* 99 F.3d at 782 n.3.

That high standard has not been met here. The October 26, 2018 letter—the only piece of evidence from the end-client PeaceHealth that sheds light on its requirements and the duties that it requires Killi to perform—does not clearly meet the USCIS's criteria. It does not explicitly state that PeaceHealth requires Killi to have a bachelor's degree. Instead, it states that Killi has "the knowledge and skills required for the assigned project" and that, "for this purpose," KPK "promised, warranted and confirmed that such Software Developer has at least a Bachelor's degree in Computer Science, Engineering or a closely related specialty field." (ECF No. 8-2, PageID 684). The USCIS could reasonably read this section of the letter as PeaceHealth stating that a bachelor's degree was a sufficient, but not necessary, condition of Killi's employment as a software developer. Moreover, the job duties listed by PeaceHealth are vague enough that the USCIS could reasonably conclude that Plaintiffs had not satisfied their burden to show that Killi would actually be performing software

development tasks at PeaceHealth. Moreover, as the USCIS notes, the PeaceHealth letter is silent as to whether Killi would be employed during the entire term of the requested visa; in fact, the letter expressly asserted PeaceHealth's "right to terminate the staffing relationship with KPK or its vendors," and thereby terminate Killi's relationship with the hospital. Thus, the USCIS's determination that Plainitffs had failed to demonstrate that Killi would be employed in a speciality occupation for the entirety of the requested time period was supported by substantial evidence, and cannot be fairly described as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## CONCLUSION

In reviewing agency action under the APA, the Court may not substitute its judgment for that of the agency, even if the Court disagrees with the agency's decision. *Marsh* 490 U.S. at 378. The Court concludes that the USCIS's decision does not meet the standard for reversal under the APA. Accordingly, the Court **DENIES** the Plaintiffs' motion for summary judgment and will enter judgment in favor of the Defendant.

**IT IS SO ORDERED.**

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: September 16, 2019